THE STATE OF OHIO, APPELLEE, *v.*
COLLINS ET AL., APPELLANTS.

[Cite as State v. Collins (1977), 60 Ohio App. 2d 116.]

118

(Case No. 5-76-39—Decided May 13, 1977.)

Mr. Carl W. Hinton, prosecuting attorney, and Mr. J. Stanley Needles, for appellee.
Mr. Ronald G. Heck, for appellants.

GUERNSEY, J. Defendants Harold Collins, Louis Layton, Ron Morehart and Art Bicklehaup were jointly indicted on the charge that "on or about the 7th day of March, 1976, at Hancock County, Ohio,***[they] did engage in sexual conduct with another, to-wit: one Margaret***, not the spouse of***[any of the said defendants], the said***[defendants] purposely compelling Margaret***to submit by force in violation of the Ohio Revised Code, Title 29, Section 2907.02***." They were jointly tried, found guilty and sentenced in the Court of Common Pleas of Hancock County. In this case defendants Layton and Morehart appeal from the judgment of conviction and sentence assigning error in nine-

teen particulars which we will treat in a slightly different order than that assigned.

*Third Assignment of Error.* "The court erred in overruling the defendants' motion for a mistrial for the reason that the Prosecutor's general reference to rape being a crime of a violent nature for the reason that the comment to the jury and the remarks accompanying it with regard to the crime of rape were prejudicially erroneous because such remarks are calling for a conviction as a general duty and [not] a conviction of these defendants by proof of guilt beyond a reasonable doubt."

*Fourth Assignment of Error.* "The trial court erred in not granting the defendants' motion for acquittal or, in the alternative, a new trial for the reason that the Prosecutor made remarks during his closing argument which were not comment upon the evidence but only an effort to appeal to the emotions and prejudices of the jury with regard to the crime of rape generally instead of appealing to the jury to convict because of proof established beyond a reasonable doubt."

Although the reference in the brief to T p. 282 is erroneous, it is apparent that these assignments of error refer to page 828 of the transcript of proceedings where in beginning his opening argument to the jury the prosecutor said:

"In this case we are talking about a crime called rape. And let's look at the crime itself. We are talking about an assault. It's an assault on a person. We are not talking about a crime of passion, but a crime of violence. We are not talking***"

At this point the defense counsel moved for a mistrial.

We find nothing improper in these remarks, that they constitute fair comment, and that the third and fourth assignments of error are without merit.

*Fifth Assignment of Error.* "The trial court erred in overruling the defendants' motion for an order finding O.R.C. 2907.02 (C) and the first paragraph of O.R.C. 2907.02 (D) unconstitutional because said section denied these defendants substantive due process of law, equal protection of the laws, and the right to confront witnesses against them pursuant to the 6th Amendment, United States Constitution."

The defendants do not in the argument in their brief set forth any contention relating to R. C. 2907.02 (C) and their argument is confined to the following provision of R. C. 2907.02 (D):

"(D) Evidence of specific instances of the victim's sexual activity,* * * shall not be admitted under this section unless it involves evidence of the origin of semen,* * * and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."

It is basic to the principles of constitutional law that a court is not permitted to pass upon the constitutionality of a statute (or part thereof) unless such determination is necessary to its decision. *Euclid* v. *Heaton* (1968), 15 Ohio St. 2d 65. Such determination could not be necessary to the decision of the trial court unless it should appear that by reason of the statute evidence offered by the defendants was excluded from the consideration of the jury.

The prosecution offered into evidence blue jeans allegedly worn by the victim at the time of the alleged acts for which the defendants were charged. A qualified laboratory technician testified that tests indicated the presence of semen in the crotch area of the jeans. She testified to the effect that after she had been "gang raped" she donned these blue jeans without any underwear and wore them from the house in which the alleged rapes occurred; that she was unmarried and had only one boy friend; and that she and her boy friend had attempted intercourse several days before the rape incident but that because of the pain of a suspected ovarian cyst had to abandon same without ejaculation. The court would not permit defense counsel to question her as to whether she had ever had oral sex and anal sex, would not permit questions as to her general sexual conduct, but permitted full crossexamination of her as to her normal sexual relationships with her boy friend and also permitted her to be questioned as to the wearing of the blue jeans when dating other men. The claim of exclusion relates only to the victim's testimony.

The question as to previous oral sex by the victim was wholly irrelevant to the factual situation here at issue. Most of the questions objected to were overruled not because of the ultimate evidence sought, but because of the form thereof

and the route taken by the examiner. It does not appear that any relevant testimony of the victim was excluded by reason of the operation of this statute. The constitutional issue does not, therefore, arise and we find this assignment of error wholly without merit.

*Sixth Assignment of Error.* "The trial court erred in overruling the defendants' motion for a mistrial when a State's witness testified polygraphs were given in the course of his investigation of the alleged offense pursuant to suggestion from the Prosecuting Attorney to the witness to mention this fact."

*Seventh Assignment of Error.* "The trial court erred in overruling the defendants' motion for a new trial because of the misconduct of the Prosecuting Attorney and a State's witness because the witness had been coached by the Prosecutor to indicate before the jury that polygraph examinations were given."

*Eighth Assignment of Error.* "The trial court erred in overruling the defendants' request for voir dire examination of State's witness concerning his mention of giving polygraph examinations and his reference thereto during the course of his testimony."

At page 692 of the transcript the following occurred in the examination of a detective by the prosecuting attorney:

"Q Okay. Can you tell us what else you did in the course of this particular investigation.

"A I attempted to connect club names and true names with individuals who had been mentioned from the victim as well as Mr. Layton, to ascertain who was who. There were polygraphs given."

At this point defense counsel objected and moved for a mistrial because of the reference to polygraphs. The court sustained the objection, instructed the jury to disregard such reference, and overruled the motion for mistrial. As an exhibit to defendants' motion for a new trial defense counsel attached his affidavit which included the following:

"During the course of this trial, I, as the attorney for the Defendants, moved the Court for a mis-trial because a State's witness, Detective Harris, Fostoria Police Dept., testified under direct examination that polygraph examinations had been given during the investigation of this case to determine

the credibility of State's witnesses. Immediately thereafter, a recess was called and in the conference room, out of the hearing of the jury, the Assistant Prosecuting Attorney acknowledged he had coached Det. Harris with reference to the use of the word polygraph during his investigation of this case and that he had advised him it could be used if defense attorneys were cross-examining, if the opportunity arose."

At page 702 of the transcript the prosecuting attorney acknowledged that there was a discussion between the officer and himself, "the discussion was whether or not since polygraphs were in fact given, whether they are admissible, and my answer was the results are not admissible. However, there is nothing wrong with stating what was done, on cross-examination."

It does not appear conclusively from the record before us that the prosecuting attorney "coached" or even suggested that the witness use the word "polygraph" on cross-examination if the opportunity arose. It could just as well have happened as the prosecuting attorney said it did, *i.e.,* that in a discussion as to admissibility he *answered* that the results were not admissible but that there would be nothing wrong with stating, on cross-examination, what had actually been done, that polygraph tests had been given. In ruling on the motion for mistrial and thereafter the motion for a new trial it was the trial court's prerogative to resolve any conflict in the statements and affidavits as to what had transpired. The danger of the use of the word "polygraph" by a detective witness is the speculation which might arise in the minds of jurors as to how a particular witness reacted to the test. To this degree it is regrettable that the prosecuting attorney may have erroneously advised his witness that reference thereto on cross-examination would be admissible. It would have been more discreet to advise him not to volunteer any such information. However, in determining whether the defendants had a fair trial we cannot be concerned with something which happened of which the jury had no knowledge but are only concerned with what was imparted to the jury. The only thing that was imparted to the jury was, "there were polygraphs given." This statement neither specifies to whom they were given nor does it say anything about the results. There is no basis on which the jury can ra-

tionally speculate to a conclusion, or, for that matter, even to an inference, leading to guilt. For the court to have permitted *voir dire* of the detective to determine his view of what advice the prosecuting attorney had given him would not alter this result.

We find that no prejudicial error occurred and that these three assignments of error are without merit.

*Ninth Assignment of Error.* "The court erred in overruling defense counsel's motion for a mistrial after the court's voir dire examination of two jurors indicated that they had read an account of the trial in the local paper on the very day they were questioned which was inflammatory upon its face and after the jurors had been twice admonished to avoid all news media and not to read about the case."

*Tenth Assignment of Error.* "The trial court erred in overruling these defendants' motion for a new trial due to misconduct of the jury which became known to the court during the course of the trial."

These assignments of error rest on a determination that two jurors had read an article in the local newspaper bearing on the first day of trial although they had been instructed not to. The defendants object not so much to the content of the article, which is in evidence and which was a factual exposition of the testimony of the selection of the jury, the opening statements and the direct examination of the victim, but object primarily to the headline thereon, *i.e.,* "Jury Seated in Gang Rape Case," the defendants contending that this constituted an outside influence which indirectly or by inference stated to the members of the jury that in fact there was a rape. We have carefully reviewed this article and must conclude that even if it might have been inferred from the headline that a rape had actually taken place, anyone reading the article, as two of the jurors did, would find from its content that the victim *"claimed* in court Monday that she was raped repeatedly," that the *"alleged* victim testified," that an attorney for one of the defendants "said in his opening statement the defense will prove she was not forced to stay at the house and she *'voluntarily* had sexual relations and participated in sexual conduct with several men,' " and that the victim said that she and her fiance had tried to have sex a couple of days "prior to the *alleged* rape." (Emphasis added.)

Although it was obviously improper for the jurors to read the article, we find from the content thereof (including the headline) from the court's *voir dire* of the jurors to determine its effect on them, and from the court's careful admonishments, that there was no error prejudicial to the defendants in the court's action in overruling motions for mistrial and for new trial on this ground. Accordingly, we find these two assignments of error without merit.

*Eleventh Assignment of Error.* "The court erred in overruling the defendants' motion for a directed verdict of acquittal for the reason that the State, in its case in chief, failed to prove not only beyond a reasonable doubt, but to any extent, the issue of venue or that the alleged offense occurred in the County of Hancock."

*Twelfth Assignment of Error.* "The trial court erred in sustaining the Prosecuting Attorney's motion to reopen its case to establish the element of venue."

At the close of the state's evidence the defendants moved for acquittal on the ground that the state had not proved venue. Without ruling on this motion the court permitted the prosecution to place a detective on the stand to testify that 1134 West Tiffin Street, Fostoria, Ohio, the address where the offenses were alleged to have taken place, is in Hancock County. The state then again rested, the motion was renewed, and then overruled. The defendants proceeded with their case, rested, the state offered no rebuttal, the defendants renewed their motions and the court overruled them.

In *State* v. *Dickerson* (1907), 77 Ohio St. 34, the Supreme Court held that in "The prosecution of a criminal case, it is not essential that the venue of the crime be proven in express terms, provided it be established by all the facts and circumstances in the case, beyond a reasonable doubt, that the crime was committed in the county and state as alleged in the indictment." See also, *State* v. *Neff* (1957), 104 Ohio App. 289.

In the state's case the victim testified that she went to a residence on Tiffin Street in Fostoria, that the alleged crime took place at that residence which was the defendants' clubhouse, and that the morning of the first day of trial she pointed the residence out to Detective Harris. Harold Layton

testified that the defendants' clubhouse was located "[j]ust about at the corporation limits on Tiffin Street."

When the motion for acquittal (or directed verdict) for failure of proof of venue was made when the state first rested the only issue presented to the trial court was whether the evidence as to venue was "insufficient to sustain a conviction." Criminal Rule 29 (A). In determining this issue and in the absence of specific evidence the court was permitted to take judicial notice that the conjunction of the corporation limits of Fostoria and Tiffin Street and anyplace "just about" that location is located in Hancock County. It is also usually held that it is within the sound discretion of the trial court as to whether to reopen a case for omitted evidence. Assuming, however, that the court could not properly conclude that the evidence before it at the time the state first rested was sufficient proof that the alleged crime took place in Hancock County, the only way the defendants could reserve the evidentiary issue as to the sufficiency of proof for review would have been for them to likewise have rested without having submitted any evidence. By submitting evidence in their own behalf they must be held to have waived the failure, if any, of proof of venue at that point. 15A Ohio Jurisprudence 2d 658, Criminal Practice & Procedure, Section 533. In such circumstances, the additional testimony of the detective that 1134 West Tiffin St., Fostoria, was in Hancock County was admissible at any time before the state finally rested. That testimony coupled further with the testimony of Carolyn Martin, defendants' witness, that the house where the victim claimed the incidents took place was located at 1134 West Tiffin St. supplied any deficiency of proof of venue to withstand the motion for acquittal made by the defendants at the close of all the evidence.

Accordingly, we find the eleventh and twelfth assignments of error without merit.

*Thirteenth Assignment of Error.* "The court erred in overruling the defendants' motion for a directed verdict of acquittal for the reason that the State failed to prove affirmatively an essential allegation contained in the indictment, to wit: that the victim Margaret***was not the spouse of the defendant Ronald Morehart or the spouse of defendant Louis Layton."

R. C. 2907.01 (L), applicable to the offenses here under consideration, defines "spouse" as "a person married to an offender at the time of the alleged offense***." Although we find no specific testimony that the victim was not married to either of the defendants at the time of the alleged offense, the victim did testify that prior to the evening of the events in question she had never met the defendants and accounted for her time thereafter until the offense which account did not include a marriage, testified that R_____ is her married name and K_____ was her maiden name, testified that she was divorced in 1972, and testified that one John Ferguson was her fiance at the time that the alleged offense was committed. The victim's testimony in these respects constituted sufficient evidence to constitute proof beyond a reasonable doubt that she was not the spouse of either of the defendants.

The thirteenth and fourteenth assignments of error are without merit.

*Fifteenth Assignment of Error.* "The trial court erred and abused its discretion in overruling the defendants' motion for a new trial without a hearing."

Under the provisions of Criminal Rule 47 the trial "court may make provision by rule or order for the submission and determination of motions without oral hearing." Under the trial court's Rule 3 motions "shall be decided without oral hearing, unless oral hearing is expressly requested by counsel." We have thoroughly searched the record and find no request by defense counsel for the oral hearing of defendants' motion for a new trial. The assigned error is not affirmatively shown by the record and is, therefore, without merit.

*Sixteenth Assignment of Error.* "The trial court erred in denying and overruling the defendants' written request to instruct the jury as to lesser included offenses as set forth in O.R.C. 2907.03 (Sexual Battery) (A) (1) (2) and (3); O.R.C. 2907.05 (Gross Sexual Imposition) (A) (1); O.R.C. 2907.06 (Sexual Imposition) (A) (1) and (2)."

On June 17, 1976, before summations to the jury commenced, defense counsel filed written request for instructions to the jury, the request being in substantially the same language as that part of the foregoing assignment of error appearing after the word "written." The court overruled the

request before arguments. There is no claim as to any improper procedure in making the request and the only issue is whether the court otherwise properly refused same.

The crime charged and the alleged lesser included offenses are set forth in the statutes as follows:

R. C. 2907.02 Rape. "(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:

"(1) The offender purposely compels the other person to submit by force or threat of force."

R. C. 2907.03 Sexual battery. "(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:

"(1) The offender knowingly coerces the other person to submit by any means that would prevent resistance by a person of ordinary resolution.

"(2) The offender knows that the other person's ability to appraise the nature of or control his or her own conduct is substantially impaired.

"(3) The offender knows that the other person submits because he or she is unaware that the act is being committed."

R. C. 2907.05 Gross sexual imposition. "(A) No person shall have sexual contact with another, not the spouse of the offender, when any of the following apply:

"(1) The offender purposely compels the other person to submit by force or threat of force."

R. C. 2907.06 Sexual imposition. "(A) No person shall have sexual contact with another, not the spouse of the offender, when any of the following apply:

"(1) The offender knows that the sexual contact is offensive to the other person, or is reckless in that regard.

"(2) The offender knows that the other person's ability to appraise the nature of or control the offender's conduct is substantially impaired."

It is basic to the existence of a lesser included offense that the proof of all of its elements is included within the required proof of the greater offense. The offenses of sexual battery set forth in R. C. 2907.03 (A) (2) and (A) (3) and of sexual imposition set forth in R. C. 2907.06 (A) (1) and (A) (2) require proof of knowledge of the offender of an ability or

state of mind of the victim. Such proof is not required in proving the offense of rape set forth in R. C. 2907.02 (A) (1) and the offenses so set forth are not, therefore, lesser included offenses of that crime of rape.

In that in prosecuting the crime of rape proscribed by R. C. 2907.02(A)(1) it is not necessary that the victim "prove physical resistance to the offender" (see R. C. 2907.02 (C), it must be concluded that the required proof that "the offender purposely compels the other person to submit by force or threat of force" does not include any required proof that the force or threat of force used constitutes a "means that would prevent resistance by a person of ordinary resolution." Accordingly, we conclude that the crime of sexual battery set forth in R. C. 2907.03 (A) (1) is not a lesser included offense of the crime of rape set forth in R. C. 2907.02 (A) (1).

The only difference between the crime of rape set forth in R. C. 2907.02 (A) (1) and the crime of gross sexual imposition set forth in R. C. 2907.05 (A) (1) is that the former requires proof that the offender engaged in sexual conduct with the victim whereas the latter requires proof that the offender had sexual contact with the victim. R. C. 2907.01 (A) defines "sexual conduct" as meaning "vaginal intercourse between a male and female, and anal intercourse, fellatio, and cunnilingus between persons regardless of sex" with penetration, however slight, being "sufficient to complete vaginal or anal intercourse." R. C. 2907.01 (B) defines "sexual contact" as meaning any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." Obviously, proof of sexual conduct consisting of vaginal intercourse or of anal intercourse includes proof of sexual contact and, at least to that degree, the crime of gross sexual imposition set forth in R. C. 2907.05 (A) (1) constitutes a lesser included offense of the crime of rape set forth in R. C. 2907.02 (A) (1). Was it then necessary for the trial court to instruct the jury on this one lesser included offense?

In *State* v. *Nolton* (1969), 19 Ohio St. 2d 33, the Supreme Court held:

"If in a criminal case the evidence adduced on behalf of the defense is such that if accepted by the trier of the facts it

would constitute a complete defense to all substantive elements of the crime charged, the trier will not be permitted to consider a lesser included offense." See also, *State* v. *Mastel* (1971), 26 Ohio St. 2d 170, *State* v. *Carver* (1972), 30 Ohio St. 2d 280, *State* v. *Fox* (1972), 31 Ohio St. 2d 58, *State* v. *Strodes,* (1976), 48 Ohio St. 2d 113, and *State* v. *Roberts* (1976), 48 Ohio St. 2d 221.

Although it appears from the record that defendants' counsel waived opening statement and did not specifically call any witnesses for the defense, it also appears from the record that he joined in a stipulation as to a witness called by another defendant, questioned another defense witness in such manner as to develop the theory of defendants' case and did not rest defendants' case until after the close of such examination. It also appears from his cross-examination of all the witnesses and particularly from his final summation that the theory of defendants' case was not that sexual conduct did not occur between the victim and the defendants but that the victim was not compelled to submit by force. On page 859 of the transcript defense counsel concludes his argument:

"***[T]hey are entitled to acquittal. And that's what I am asking you to do. Specifically, as to Ron Morehart, Louis Layton, and all the defendants on the sole issue of whether or not this woman was purposely compelled to submit by force on the night in question."

Thus, the entire theory of defendants' evidence and defendants' case was the lack of force. In view of such defense the defendants could not consistently or reasonably be acquitted of the crime of rape as prescribed by R. C. 2907.02 (A)(1) on the theory that the victim submitted without the use of force and consistently and reasonably be found guilty of the crime of gross sexual imposition as prescribed by R. C. 2907.05 on the contradictory theory that force, or the threat of force, was used by the perpetrators.

In our opinion, based on *State* v. *Nolton, supra,* the trial court committed no error as assigned by the sixteenth assignment of error.

*Seventeenth Assignment of Error.* "The trial court committed reversible error in ruling the defendants' counsel was not permitted to use a statement of the victim***in cross-examining her in open court when there were inconsistencies

contained in her statement from what she testified to and about during the trial."

We have carefully examined the statement in question, the in camera proceedings relative thereto, and the subsequent cross-examination of the victim. We find no instance where the court did not permit counsel to examine as to the alleged inconsistencies. We find this assignment of error without merit because not portrayed by the record.

*Eighteenth Assignment of Error.* "The trial court committed reversible error in admitting four photographs of the four co-defendants, over the objection of defense counsel, because sufficient foundation was not established to indicate that these were fair and accurate representations of the defendants on the date of the alleged offense, and further, the photographs should not have been admitted because the testimony was of no probative value to indicate whether or which, if any of the defendants were involved in the alleged offense."

The photographs in question were taken on April 7th and 8th, 1976, a month after the alleged rape at the time the defendants were booked at the Hancock County Jail and were first shown to the victim on the first day of trial, whereupon she identified the pictures as depicting persons among those who had participated in the alleged rapes. She also made court room identification of the defendants independently of the pictures. It also appears that an accomplice who turned state's evidence identified all four co-defendants as being on the premises where the alleged rapes took place and identified two of the four co-defendants (including one of the defendants) as having participated therein. Similarly, a defense witness, one Carolyn Martin, placed the four co-defendents on the premises during some part of the period of time when the offenses were alleged to have occurred.

It is apparent from the record that the defendants' appearance at the time of trial was somewhat different than that testified to at the time of the alleged rapes in that at the trial they had their hair neatly trimmed and were dressed in normal civilian dress and at the time of the alleged rapes the participants were dressed in the mode adopted by their motorcycle club and were unkempt in appearance. The

photographs of the four co-defendants show them dressed in attire similar to that testified to by the victim at the earlier time. Although the persons who took the photographs did not testify, there is no question from the record that the photographs were of the four co-defendants and that they appeared as the defendants did when the photographs were taken and likewise appeared similar to the way the defendants appeared at the time of the alleged rapes. In such circumstances their admission into evidence was largely within the discretion of the trial court. We do not find that discretion abused or that prejudicial error intervened as assigned.

*Nineteenth Assignment of Error.* "The trial court erred in declining to let defense counsel question the victim concerning prior sex acts after the Prosecutor had questioned the victim about prior sex acts and in doing so, the Prosecution waived any objection he may have to such questioning by defense counsel and is, therefore, deemed to have opened the door to such questioning. In declining to permit defense counsel to so question the victim, the court committed reversible error."

As we have heretofore discussed under the fifth assignment of error the trial court did limit counsel for other defendants in his cross-examination of the victim as to whether she had previously had oral or anal sex but permitted broad examination of her as to her sexual relationships with her fiance and as to her physical condition including inquiry as to a tubal ligation and as to whether she had ever had an abortion. The defendants claim in their brief that since the prosecuting attorney during two hundred and twelve pages of transcript questioned the victim concerning sexual activity with her fiance that the same constituted a waiver of the limitations of R. C. 2907.02 (D) and would permit cross-examination of the victim as to her previous sexual activity in all of its aspects. The defendants do not point out where in this two hundred and twelve pages of transcript specific instances occur constituting the waiver claimed. R. C. 2907.02 (D) with respect to the victim's sexual activity prescribes:

"Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the

origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."

We have examined the record carefully as to the direct examination of the victim by the prosecuting attorney as to her past sexual activity and it is apparent that it bore on the issues of the origin of semen on her blue jeans and on her incapacity to engage in vaginal sexual activity without pain thus relating directly to the voluntariness of the alleged vaginal intercourse between the defendants and the victim. In view of these evidentiary relationships the examination was permitted by the statute and there was no waiver permitting cross-examination of the victim as to her prior sexual activity in general. We find no limitation by the court of such cross-examination constituting error as here assigned.

*First Assignment of Error.* "The trial court erred in overruling defendant's motion for a direct [*sic*] verdict of acquittal at the conclusion of the State's case and at the conclusion of the tiral for reason that the verdict of the jury was against the manifest weight of the evidence and contrary to law."

*Second Assignment of Error.* "The trial court erred in overruling the defendants' motion for acquittal, or in the alternative, defendants' motion granting a new trial for the reason that the verdict of the jury finding the defendants guilty was against the manifest weight of the evidence and contrary to law."

As we have heretofore discussed in our disposition of the eleventh and twelfth assignments of error, defendants waived any error occurring from the overruling of their motion for a directed verdict of acquittal at the conclusion of all of the evidence and to the motion for a new trial. The argument in their brief under these two assignments of error is such that the assertion that the verdict was contrary to law must be clarified as merely an assertion that it was contrary to law because it was against the manifest weight of the evidence and not contrary to law for some other reason.

The weight of the evidence is, of course, for the jury and its verdict will not be set aside unless the reviewing court

must find to the contrary as a matter of law. The reviewing court may not find to the contrary as a matter of law when there is sufficient evidence to prove each element of the crime charged. Here the defendant made a courtroom identification of each of the defendants as having engaged with her in the sexual conduct complained of. Their presence at the scene was corroborated by the testimony of an accomplice and a defense witness. The accomplice also corroborated the actual sexual acts of defendant Morehart as well as the apparent fear of the victim. The use of initial force in holding the victim in the bedroom and disrobing her as well as the threat of continued force and the purpose of the defendants were attested to by the victim. The defendants rely heavily on medical testimony to the effect that it could not be established by physical examination that the victim had been raped. But such testimony was also to the effect that it could not be conclusively established by physical examination that the victim had not been raped. In reviewing the entire record we find sufficient evidence to prove each element of the crime charged and to support the verdict of the jury finding the defendants guilty of same. The first and second assignments of error are not well taken.

Having found no error prejudicial to the defendants, appellants herein, in any of the particulars assigned and argued, the judgment must be affirmed.

*Judgment affirmed.*

MILLER, P. J., and COLE, J., concur.